IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs ) | CASE NO.: 19-CR-00050-01-W-HFS |
| ) | |
| WILLIAM DEREK WILLIAMS, ) | |
| ) | |
| DEFENDANT ) | |

## WILLIAM DEREK WILLIAMS SENTENCING MEMORANDUM

**COMES NOW,** Mr. William Derek Williams, by and through his attorney of record, John Anthony Picerno, and hereby submits this Sentencing Memorandum, pursuant to Rule 32 of the Federal Rules of Criminal Procedure.

Mr. Williams and counsel have thoroughly reviewed the Presentence Investigation Report (PSIR) and have discussed all issues with respect to sentencing in this case. This memorandum is respectfully filed to assist this Court in determining an appropriate sentence in this cause. Mr. Williams requests a below advisory guideline range sentence of the mandatory sentencing minimum of fifteen (15) years, or One Hundred and Eighty (180) months.

### I. PROCEDURAL BACKGROUND

On August 26, 2019, Mr. Williams pled guilty to one count of Production of Child Pornography. The base offense level for this offense is 32.

1

An additional 4 points (2 points, two times) were added because the offense involved minors who had not attained the age of 16 and an additional 6 points (2 points, three times) were added due to the fact that the victims were in his custody, care, or supervisory control. The base offense level was increased by 2 additional points since Mr. Williams instructed one of the victims to destroy evidence (camera).

The offense involved the commission of a sexual act or sexual contact; therefore, 2 more points were added, and an additional 5 points were added because Mr. Williams engaged in a "pattern" of activity involving prohibited sex conduct.

Based upon the Federal Sentencing Guideline "grouping" rules regarding multiple counts, 3 more points were added to the base offense level.

Finally, Mr. Williams was granted a 3-point deduction for acceptance of responsibility.

The defendant's total offense level is 43. Mr. Williams has no prior criminal history, which results in Criminal History Category I. The advisory guideline sentence is life imprisonment.

II.  **SENTENCE TO BE IMPOSED**

Pursuant to the plea agreement, the Government has agreed that Mr. Williams may seek a departure from the foregoing sentencing guideline range and/or a variance outside the appropriate sentencing guideline range.

Mr. Williams respectfully asks the Court to impose sentence of one hundred and eighty months (180) months. Mr. Williams has accepted responsibility for his unlawful conduct in this case. He provided a full and complete factual basis during the guilty plea hearing. Mr. Williams has offered no justification or excuse for his conduct in this matter nor has he tried to minimize his conduct. Mr. Williams respectfully requests that this Court grant a variance outside the Guideline Range for reasons set out below.

**18 USC 3553(a)(1):**

**A. The nature and circumstances of the offense**

Possession of child pornography is undoubtedly a serious offense. Production of Child Pornography is even more serious. The children who are sexually exploited for purposes of promoting and producing child pornography suffer significant emotional and physical pain. In this instance, Mr. Williams surreptitiously placed a hidden camera in his bathroom and captured teenage boys masturbating. There are varying levels of culpability among defendants. Mr. Williams did not disseminate any pornography and the production in this case was not done for any monetary profit. Nor did he produce or distribute pornography to a child to entice any child or other children into engaging in a sexual act.

**The History and Characteristics of Mr. Williams**

Mr. Williams was born on August 9, 1979, in Cameron, Missouri, to the marital union of William Williams and Rosie Williams. Mr. Williams was raised in the home by both parents and his two siblings. Mr. Williams reported from birth to

3

age 21 he resided in Cameron, Missouri, before relocating to Overland Park, Kansas, for employment. Mr. Williams later returned to Cameron, Missouri, where he was residing until his arrest for the instant offense. Mr. Williams reported that during his upbringing all of his basic needs were met; however, he indicated his family struggled financially, and as result he experienced bullying. Mr. Williams stated that when he was 7 or 8 years old, he was sexually abused by a neighborhood kid. Additionally, Mr. Williams reported he was sexually abused when he was 15 years of age by another male youth similar in age. Mr. Williams added that he never told anyone about the abuse.

While incarcerated Mr. Williams has been a model citizen and has successfully completed the following programs offered at Core Civic:

1. Twelve Steps Class.

2. Anger Management.

3. Building Social Networks.

4. HIV Prevention.

5. Motivation to Change.

6. Unlock Your Thinking Open Your Mind.

7. Partners in Parenting.

8. SAA Twelve Steps, Level II. [1]

Mr. Williams comes from a loving family and has many friends, community and family members who support him. [2]

---

[1] See Attached Certificates.
[2] See Attached Letters.

**B. The Kinds of Sentences Available and the Advisory Sentencing Range**

A conviction for Production of Child Pornography under 18 U.S.C. §2251 (a) and (e) requires a minimum term of imprisonment of at least fifteen years and a maximum term of thirty years. The Court is required to impose a term of supervised release of no less than five years to life, 18 U.S.C. § 3583(k). Mr. Williams will have to register as a sex offender for life, 18 U.S.C. § 3583(d).

**1. A district court is free to reject and vary categorically from a Guideline.**

A district court may not presume that a Guidelines range is reasonable. *Gall v. United States*, 552 U.S. 38, 50 (2007). The Guidelines are "the starting point and the initial benchmark" in determining a sentence, but a court must make an individualized assessment based on the sentencing factors in 18 U.S.C. § 3553(a) and **impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing**. *Id.* at 49-50; *United States v. Beiermann*, 599 F.Supp.2d 1087, 1091 (N.D. Iowa 2009).

In the ordinary case, the Guidelines range "will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States,* 552 U.S. 85, 109 (2007). The Sentencing Commission was formed to promulgate the Guidelines based on empirical data, research and careful study of past sentencing practices. *Id.* at 96. But, where the Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," it would not be an abuse of discretion for a district court to conclude that the Guidelines yield a sentence greater than necessary to achieve § 3553(a)'s purposes. *Id.* at 109-110; see also,

5

*Spears v. United States,* 555 U.S. 261, 263-266 (2009) (district courts are entitled to reject and vary categorically from the Guidelines based on a policy disagreement with those Guidelines, even when a particular defendant presents no special mitigating circumstances).

The Court's holdings in *Kimbrough* and *Spears* apply with equal force to other Guidelines, including U.S.S.G. § 2G2.2. See, *United States v. VandeBrake*, 679 F.3d 1030, 1037 (8th Cir. 2012) (district court was free to vary based on a policy disagreement with the antitrust Guidelines); *United States v. Henderson*, 649 F.3d 955, 962-963 (9th Cir. 2011) (the child pornography Guidelines are **not the result of the Sentencing Commission's "characteristic institutional role" which require that it base it's determinations on "empirical data and national experience"**, but of frequent mandatory minimum legislation and specific congressional directives to the Commission to amend the Guidelines, and district courts may vary from the Guidelines based on policy disagreement with them); *United States v. Dorvee*, 616 F.3d 174, 188 (2nd Cir. 2011) .

**18 USC 3553(a)(2):** The Need for the Sentence Imposed –

**(A) To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

Mr. William's offense is punishable by imprisonment for a minimum of 15 years and once he is released from custody he will be required to register for the rest of his life as a sex offender. The fact that he is a sex offender will be posted on

6

the internet, he will likely experience difficulties in seeking employment, he will have trouble in obtaining a residence, and he will suffer the stigma that the designation incurs. He will not be allowed to associate or have any contact with underage persons, except in the presence of another adult who is aware of his background. These are not trivial consequences. As one court put it: "To be adjudicated guilty necessarily results in denomination as a sex offender; automatically provided is a lifetime of continuous punishment—being marked as a pariah with severe restrictions on residence, movements, activities and associations. Adding unnecessary, unduly long, periods of incarceration is inappropriate, and it should be avoided." *United States v. R.V.*, 157 F.Supp.3d 207, 210 (E.D.N.Y. 2016).

**(B) To Afford Adequate Deterrence to Criminal Conduct**

Both concepts set out in (A) and (B) can be achieved with the imposition of a 180-month custody sentence. A review of the criminological literature reveals that to the extent that criminal sanctions do have a general deterrent effect, the certainty (how certain an offender will be deterred) of punishment has a far greater deterrent effect than the severity of the sanction. *Any* sentence of incarceration, however short, has a significant deterrent effect upon any offender. Title 18 USC '3553(a)(2)(B)'s directive that the sentence imposed afford adequate deterrence to criminal conduct does not require a lengthy term of imprisonment. The fact that Mr. Williams was investigated, prosecuted, and pled guilty for his actions and will receive a significant prison sentence of 180 months at the age of forty-one (41) will be sufficient to deter potential similarly situated offenders.

7

**(C) To Protect the Public from Further Crimes of the Defendant**

Mr. Williams was examined and tested by Dr. Steven A Mandracchia and obtained a score of one (1) on the Static-99R places him in the Below Average Risk Level. This score yields a predicted sexual recidivism rate of 3.9% over a five-year period, based on comparison with the Routing Sample of the instrument.[3] A 180-month sentence will surely protect the public from further crimes of Mr. Williams in the immediate future, and hopefully, he will be rehabilitated to the point where he will not commit any crimes in the future.

Mr. Williams has does not have any criminal history. A federal offender's criminal history is closely correlated with recidivism rates. Re-arrest rates range from 30.2 percent for offenders with zero total criminal history points to 80.1 percent of offender in the highest Criminal History Category, VI. Each additional criminal history point was generally associated with a greater likelihood of recidivism. (*Recidivism Among Federal Offenders: A Comprehensive Overview, United States Sentencing Commission, Pg. 5, March, 2016*).

The U.S. Sentencing Commission has released several studies on recidivism, including <u>Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines (May 2004)</u>; "Recidivism rates decline relatively consistently as age increases, from 35.5% under age 21, to 9.5% over age 50. The rate of recidivism for offenders with zero criminal history points is 3.5%. Recidivism rates also decrease with increasing education levels (no high school 31.4%), high school (19.3%), some

---

[3] See Static 99 Exhibit.

college (18%), and college degree (8.8%). Id at 12. Mr. Williams is a 40-year-old, college graduate, with no prior criminal history, consequently, he is a minimal risk to reoffend.

**(D) To Provide Mr. Williams with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

Given his crime, age, education, and employment history, Mr. Williams is a candidate for educational, vocational, and sex offender treatment. He has expressed a desire to participate any educational, vocational, and treatment programs that are available to him.

The Bureau of Prisons offers extensive sex offender treatment programs.[4] These programs provide treatment and specialized management services to inmates who are convicted of sex offenses. The goal of these programs is to reduce the incidence of sexual re-offending.

The BOP has specially designated Sex Offender Management Programs (SOMP). The SOMP is designed to provide services that minimize the inmate's risk for sexual re-offense. The SOMP employs psychologists and treatment specialists who perform specialized assessments of sexual offenders. These evaluations include risk assessments and diagnostic assessments of psychosexual and associated disorders.

---

[4] *See* Bureau of Prisons "Sex Offender Program" Program Statement for description of the entire BOP Sex Offender Treatment and Management Services.

9

After the evaluation is completed the SOMP offers Sex Offender Treatment Programs (SOTP) to inmates. The SOTP offers high-intensity programs for sex offender treatment. The SOTP provides cognitive-behavioral programs in a modified therapeutic community that has proven effective in reducing inmate recidivism. A modified therapeutic community in a prison setting stresses pro-social values and behaviors that are needed in the outside community.

Additionally, the Bureau of Prisons initiates a review of each sex offender case 18 months from their projected release date to determine whether civil commitment should be recommended for those inmates who have not fully and successfully participated in sex-offender treatment and who pose a future risk to society upon their release. If the BOP believes that an inmate poses a future risk, it can recommend that the inmate be civilly committed pursuant to 18 U.S.C. §4248. The BOP conducts an exhaustive evaluation of every inmate with a goal of eliminating sexual reoffending upon release.

Clearly, the BOP has the programs necessary to provide Mr. Williams with the treatment that he needs. The BOP treatment will provide Mr. Williams with the skills necessary to address that issues that were created when he was molested as a child. Further, this treatment has proven effective in ensuring that individuals like Mr. Williams do not reoffend or pose a threat in the future.

**18 USC § 3553(a)(3): The Kinds of Sentences Available**

18 U.S.C. 3553(a)(3) requires the Court to consider "the kinds of sentences available" in a given case. Here, the Court has available to it a rather lengthy and

significant sentence as a form of punishment. Indeed, a sentence of 180 months will allow the Court to both punish Mr. Williams sufficiently while, at the same time, allowing him the opportunity to be released an age (55 years old) where he can attempt to rebuild his life, while restoring the trust of his family and friends.

A total sentence of 180 months would satisfy this sentencing mandate. It is the goal of sentencing to prevent unnecessary incarceration and to limit prison sentences to those individuals who pose the greatest risk to society. As renowned criminologist Norval Morris has consistently argued, and reflective of the recent Supreme Court decisions, when determining punishment, "the least restrictive (punitive) sentence necessary to achieve defined social purposes should be imposed."[5]

**18 USC § 3553(4), (5): The Sentencing Guidelines Provisions**

Mr. Williams conviction alone serves as a general and specific deterrent. In short, there are substantial reasons as to how a 180-month sentence satisfies the concerns of 18 U.S.C. 3553 and the holding in *Booker*. A sentence prison sentence of this duration is consistent with the suggestions herein would serve all the goals of punishment established by the Sentencing Reform Act.

**18 USC § 3553(6): The Need to Avoid Unwarranted Sentencing Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.**

---

[5] *The Future of Imprisonment, University of Chicago Press (1974), p. 59*, Norval Morris.

According to the United States Sentencing Commission Report to Congress 2018, 42.1 percent of sexual abuse (includes Contact Offenses, Promoting Commercial Sex Acts, Traveling to Engage in Prohibited Sexual Conduct with a Minor and Production of Child Pornography, etc.) offenders (2014-18) received below range variances (Quick Facts, Pg. 2). A 180-month sentence for Mr. Williams under all the factors set out herein, will not cause a sentencing disparity among similarly situated defendants.

**CONCLUSION**

18 U.S.C. 3553(a) (3) requires the Court to consider "the kinds of sentences available" in a given case. Mr. Williams is a middle-aged family man, with a college degree, and no prior criminal history of any kind. Here, the Court has available to it a sentence of a mandatory minimum of 180 months imprisonment to a maximum of life imprisonment. A sentence of 180 months will allow the Court to punish Mr. Williams sufficiently, while at the same time, serving as deterrence to him and others for this type of criminal behavior. Any sentence in excess of 180 months would be a sentence greater than necessary to impose a sentence sufficient, but not greater than necessary, to meet specified sentencing goals, including the goals of just punishment and deterrence. This type of sentence will sentence satisfy the concerns of 18 U.S.C. 3553 and the holding in ***Booker***.

A prison sentence of 180 months is consistent with **Galls** instruction that district courts should consider every convicted person as an individual and every case

as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. **Gall,** 128 S.Ct at 598.

For the reasons set forth above, the Mr. Williams respectfully requests this Honorable Court for a sentence of 180 months, or for a sentence the Court deems is just, necessary, and appropriate under all the facts and circumstances in this case.

The U.S. Supreme Court's ruling in *Gall* mandates that district courts should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Gall*, 128 S.Ct at 598. Mr. Williams history and characteristics provide substantial mitigation to the imposition of an advisory guideline sentence. A sentence of 180 months is sufficient but not greater than necessary to serve the purposes of sentencing pursuant to 3553(a).

Respectfully submitted,

***/s/ John Anthony Picerno***
John Anthony Picerno MBN: 41861
1301 Oak Street, Suite 1805
Kansas City, Missouri 64106
Telephone:   816-471-3330
Facsimile:   816-396-5680
Mobile:   816-694-71806
Email:   JPLaw@JohnPicerno.com
**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

In accordance with Rule 49(a), (b) and (d), fed. R. Crim. P., and Rule 5(b), Fed. R. Civ. P., it is hereby CERTIFIED that this Entry of Appearance was electronically filed this 14th day of January 2020, and that a copy was sent to all concerned parties, through the Court's Electronic Case Filing System.

/s/ *John Anthony Picerno*
John Anthony Picerno